IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-577-D

| | | |
|---|---|---|
| SEAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOSE GARCIA, individually | ) | |
| and in his official capacity; | ) | |
| and the TOWN OF SPRING LAKE, | ) | |
| | ) | |
| Defendants. | ) | |

On June 17, 2007, Spring Lake Police Officer Jose Garcia ("Garcia" or "defendant") shot Sean Smith ("plaintiff" or "Smith"). In this action, Smith seeks to recover damages from Garcia and the Town of Spring Lake under 42 U.S.C. § 1983 and under North Carolina tort law. Garcia requests summary judgment on Smith's negligence and negligent infliction of emotional distress claims against him in his individual capacity based on public-official immunity under North Carolina law. As explained below, the court grants Garcia's motion for partial summary judgment [D.E. 22].

I.

In order to understand the shooting of June 17, 2007, one must begin with a June 15, 2007 encounter that Smith had with Officers Johnson and Sutton of the Spring Lake Police Department.[1] On June 15, 2007, Johnson and Sutton responded to a call that Smith had stolen beer from a gas station in Spring Lake. See Garcia Dep. 52–53; Smith Dep. 94–96. On June 16, 2007, as Garcia was starting his shift, Johnson told Garcia about the incident. Garcia Dep. 53. Johnson told Garcia that

---

[1]Smith disputes the accuracy of the information that Garcia received from fellow officers regarding the events preceding the June 17, 2007 shooting. However, Smith has not challenged whether Garcia actually received the information that he did. The court discusses the information that Garcia received as relevant to his subjective state of mind at the time of the shooting for purposes of analyzing whether Garcia is entitled to public-official immunity.

he and Sutton had responded to a call about stolen beer at a gas station. Johnson also informed Garcia that Smith had told the clerk he would kill her if she called the police, that Smith had dropped the beer as the officers approached, that Smith crouched in a "fighting stan[ce]," and that Smith then ran away. Id. Johnson also informed Garcia that later that same evening, he and Sutton responded to a call at the Gateway Inn in Spring Lake. See Garcia Dep. 53–56. When Johnson and Sutton arrived at the Gateway Inn, Smith began throwing rocks and bricks at them and their vehicles. Id. at 54. Smith then took off running and Jones and Sutton did not pursue him. Id. Upon learning of this incident, Garcia asked Johnson whether there was an outstanding warrant for Smith's arrest. Id. Johnson responded that he was waiting to talk to Chief Brown about the incident. Id. Later that day, an arrest warrant for Smith was issued. See id.[2]

This discussion with Johnson was not the first time Garcia had encountered Smith or heard from other officers about Smith. Various officers had informed Garcia that Smith was combative and difficult to control. See Garcia Dep. 45–52. Garcia also had encountered Smith at a laundromat that Garcia was checking due to recent break-ins. See id. 50. Garcia stopped at the laundromat, explained recent break-ins, and asked Smith what he was doing there. Id. Smith said "okay" and left. Id.; see Smith Dep. 80–86.

On June 17, 2007, at approximately 2:00 p.m., while Garcia was on duty at the Spring Lake Police Department, Officer Utley informed Garcia that he had seen Smith outside of "Checkers" sitting at a picnic table. Garcia Dep. 59–60. Utley was on duty, but in plain clothes, and had been eating at Checkers. Id. at 70. At Utley's request, Garcia checked for an outstanding arrest warrant

---

[2]As mentioned, Smith disputes the truth of what Johnson told Garcia. According to Smith, when Johnson and Sutton arrived at the gas station on June 15, 2007, they hit him with their batons and pepper sprayed him. See Smith Dep. 96. Smith then ran away. Id. According to Smith, he had no other interactions with Johnson or Sutton on June 15, 2007. See id. at 98. After the incident at the gas station, Smith tried to avoid the police because he thought the police were still after him. See id. at 103, 128.

2

for Smith and discovered one. Id. at 59. Garcia then told Utley that he would arrest Smith. See id. at 60.

Garcia left the Spring Lake Police Department and drove to Checkers. Id. While driving, Garcia radioed Officer Semple to inform him that Smith had been spotted at Checkers. Id. When Garcia reached Checkers, he saw Smith sitting at a picnic table. Id. Smith spotted Garcia's marked police car and started walking away. Id. Still in his car, Garcia passed Checkers and made a u-turn to pursue Smith. Id. Garcia lost sight of Smith, but pursued Smith toward the Gateway Inn. Id. at 61–62. Garcia continued to update Semple on the pursuit. Id. at 61.

As Garcia approached the Gateway Inn, he saw Smith sitting on a brick wall behind the hotel. Id. at 62; see Smith Dep. 124–26. Garcia pulled his car into a gravel area behind the Gateway Inn. Garcia Dep. 62. When Smith spotted Garcia, Smith started running away. Id.; see Smith Dep. 129, 131–35. Garcia radioed that he was in full pursuit, exited his car, and chased Smith on foot. See Garcia Dep. 62. Garcia yelled "stop, police" several times, but Smith did not stop running. Id. at 62–63.

Garcia chased Smith toward a nearby church. See id. at 63; Smith Dep. 138, 142. Smith continued running and heard Garcia chasing him. See Smith Dep. 135. Smith then heard what sounded like a gun shot and felt a push, causing him to stumble, but Smith continued running. Id. at 136–138, 143.[3] Smith reached a tree near the church, stopped, and turned around to face Garcia. See Garcia Dep. 63; Smith Dep. 131. Garcia and Smith were between 6.5 to 10 feet apart at this time. Compare Garcia Dep. 76, 79–80 (6.5 to 7 feet), with Smith Dep. 142, 149 (10 feet), 151 (8 to 10 feet). Garcia states that he saw a brick in Smith's hand and told Smith to drop it. See Garcia Dep. 63–64. As he saw Smith bring the brick back as if he was preparing to throw it at him, Garcia shot Smith twice. Id. at 64; see id. at 79–80. Smith denies having anything in his hands or hearing

---

[3]The record contains no evidence that Smith was shot in the back.

3

any orders from Garcia before he was shot. See Smith Dep. 142, 147–48. Smith admits, however, that a brick was found near him after the shooting and that the brick had Smith's blood on it. See id. at 147, 173–74.

After Smith was shot, he fell to the ground bleeding. See Garcia Dep. 64; Smith Dep. 131. Garcia holstered his weapon and walked toward Smith. Garcia Dep. 64. Smith lay on the ground mumbling with blood coming out of his right arm. Id. Garcia then radioed for medical assistance. Id. at 65. Garcia did not receive a response from dispatch and was unsure whether the call went through. See id. Shortly thereafter, Semple arrived and Garcia heard Semple call for medical assistance several times. Id. at 65, 87–88, 91.

After the incident, a crowd started to gather. Id. at 65–67, 88–89. Semple and Garcia repeatedly asked Smith whether he was alright, but Smith was unresponsive. Id. at 68. Garcia did not administer first aid because members of the crowd were hostile to the officers, and Garcia did not want to turn his back on the crowd. Id. at 90–91. Before paramedics arrived, Smith vacillated in and out of consciousness. See Smith Dep. 176. Smith testified that it took between 45 minutes and an hour for paramedics to arrive. Id. Garcia testified that it took about 15 minutes. See Garcia Dep. 88. Once paramedics arrived, they provided medical care to Smith. See Smith Dep. 175–76. Garcia then unloaded his weapon and handed it to Semple. Garcia Dep. 107.

The medical records reveal that Smith tested positive for cocaine and marijuana. See Smith Dep. 152, 183. The gunshots resulted in injuries to Smith's left upper arm, left chest area, and right forearm. See id. at 179–80.

Smith alleges several claims against Garcia and the Town of Spring Lake, including an excessive-force claim under 42 U.S.C. § 1983 and claims under North Carolina tort law for assault, battery, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress claims. Compl. ¶¶ 16–42. On May 13, 2010, Garcia moved for partial summary judgment on Smith's claims of negligence and negligent infliction of emotion distress against Garcia in his

4

individual capacity based on public-official immunity under North Carolina law [D.E. 22]. Smith responded in opposition [D.E. 25], and Garcia replied [D.E. 27].

## II.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. After the moving party has met this burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

In Smith's negligence claim, he alleges that Garcia negligently fired his weapon and negligently failed to provide "prompt and proper medical attention for [Smith]." Compl. ¶¶ 36(a), (c). Smith also alleges that Garcia "negligently engaged in conduct which was reasonably foreseeable to cause, and which in fact did cause, plaintiff to suffer severe emotional distress." Id. ¶ 40. Garcia responds that he is entitled to public-official immunity under North Carolina law as to Smith's claims of negligence and negligent infliction of emotional distress against Garcia in his individual capacity. See Mem. Supp. Mot. Summ. J. 6–8.

Under North Carolina law, police officers are public officials who may be entitled to public-official immunity. See, e.g., Prior v. Pruett, 143 N.C. App. 612, 623, 550 S.E.2d 166, 173–74 (2001); Schlossberg v. Goins, 141 N.C. App. 436, 445, 540 S.E.2d 49, 56 (2000). Under North Carolina law, a "[p]ublic official[] cannot be held individually liable for damages caused by mere

5

negligence in the performance of [his] governmental or discretionary duties," unless his conduct "was corrupt or malicious, or . . . outside of and beyond the scope of his duties." Meyer v. Walls, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997); Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976); Prior, 143 N.C. App. at 623, 550 S.E.2d at 173–74. A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). The act must be "done of wicked purpose, or . . . done needlessly, manifesting a reckless indifference to the rights of others." Id. at 313, 321 S.E.2d at 891 (quotation omitted).

Public-official immunity applies to Smith's claims of negligence and negligent infliction of emotional distress, unless Smith forecasts evidence showing that Garcia acted with malice or corruption. See, e.g., Prior, 143 N.C. App. at 623, 550 S.E.2d at 173–74. Malice and corruption are difficult to show because "it is presumed that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551, 284 S.E.2d 470, 472 (1981) (quotation omitted).

To support his claim of malice against Garcia, Smith argues that, when Garcia shot him, Smith was not "actively resisting arrest[]," Garcia was serving only a "misdemeanor warrant" which "did not occur in the presence of Garcia," and that Garcia's use of force was "unreasonable and excessive" and without "probable cause." Pl.'s Resp. 7–8. Smith also contends that Garcia's malice was reflected in the slow manner in which he called for medical assistance and in Garcia's failure to provide medical assistance to Smith. See id. at 10.

The court views the evidence in the light most favorable to Smith, through the prism of North Carolina law on public-official immunity. See, e.g., Meyer, 347 N.C. at 112, 489 S.E.2d at 888. Even viewing the evidence in the light most favorable to Smith, he has failed to forecast sufficient

6

evidence that Garcia's conduct was "corrupt or malicious" or that Garcia acted "outside of and beyond the scope of his duties." Id., 489 S.E.2d at 888. Simply put, Smith's arguments cannot overcome the uncontroverted evidence about Garcia's subjective state of mind.

In opposition to this conclusion, Smith cites Schreiber v. Moe, 596 F.3d 323 (6th Cir. 2010), and argues that Garcia's use of force was objectively unreasonable. See Pl.'s Resp. 8–10. However, Smith's reliance on Schreiber is misplaced. In Schreiber, the Sixth Circuit considered whether the police officer was entitled to qualified immunity on the plaintiff's Fourth Amendment excessive-force claim. See Schreiber, 596 F.3d at 331–35. The qualified-immunity inquiry for a section 1983 excessive-force claim examines the "objective reasonableness" of the officer's actions. See, e.g., Graham v. Connor, 490 U.S. 386, 388 (1989); Wilson v. Flynn, 429 F.3d 465, 467–68 (4th Cir. 2005). North Carolina's public-official-immunity analysis, however, examines the officer's subjective state of mind. See, e.g., Andrews v. Crump, 144 N.C. App. 68, 76, 547 S.E.2d 117, 123 (2001); see also Alford v. Cumberland County, No. 06-1569, 2007 WL 2985297, at *7 (4th Cir. Oct. 15, 2007) (unpublished). Thus, Schreiber does not help Smith.

As for Garcia's alleged failure to provide prompt medical assistance, Smith contends that Garcia acted with malice because he "made one call for medical assistance" which "did not go through," and he did not provide first aid while waiting for the paramedics to arrive. Id. at 10. Again, even when the evidence is viewed in the light most favorable to Smith, Garcia's conduct was not "corrupt or malicious" and he did not act "outside of and beyond the scope of his duties." Meyer, 347 N.C. at 112, 489 S.E.2d at 888. In reaching this conclusion, the court notes Garcia's uncontroverted testimony about the hostile crowd and testimony that he called for medical assistance once and he heard Semple call for medical assistance numerous times.

Finally, as for Smith's claim of negligent infliction of emotional distress, Smith merely speculates that Garcia's actions were "willful or wanton." See Compl. ¶ 40. Mere speculation, however, is insufficient to support a claim of malice. See, e.g., Alford, 2007 WL 2985297, at *7.

7

In sum, Smith has failed to forecast sufficient evidence that Garcia's conduct was "corrupt or malicious," or that he acted "outside of and beyond the scope of his duties." Meyer, 347 N.C. at 112, 489 S.E.2d at 888. Accordingly, public-official immunity applies to the two negligence claims. Thus, the court grants partial summary judgment to Garcia on plaintiff's claims of negligence and negligent infliction of emotional distress against Garcia in his individual capacity.

III.

As explained above, the court GRANTS Garcia's motion for partial summary judgment [D.E. 22], and DISMISSES Smith's claims of negligence and negligent infliction of emotional distress against Garcia in his individual capacity.

SO ORDERED. This **20** day of August 2010.

JAMES C. DEVER III
United States District Judge

8